UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LYNN PETERS f/k/a LYNN M. DEJAC,

                        Plaintiff,

       -against-

CITY OF BUFFALO, BUFFALO POLICE
DEPARTMENT, COUNTY OF ERIE,
JOSEPH J. MARUSAK, FRANK J. CLARK, III,
DET. JAMES LONERGAN, Individually and as
Officer of BUFFALO POLICE DEPARTMENT,
DET. MARK STAMBACH, Individually and as
Officer of BUFFALO POLICE
DEPARTMENT, DET. MICHAEL D. LYONS,
Individually and as Officer of BUFFALO POLICE
DEPARTMENT, DET. HENRY SMARDZ,
Individually and as Officer of BUFFALO POLICE
DEPARTMENT, DET. ANGELO CANNIZZARO,
Individually and as Officer of BUFFALO POLICE
DEPARTMENT, JOHN DOES NO. 1-5
Individually and as Officers of BUFFALO POLICE
DEPARTMENT, LT. JAMES D. RAUTENSTRAUCH,
Individually and as Officer of BUFFALO POLICE
DEPARTMENT, CHARLES T. FIERAMUSCA,
Individually and as Chief of Homicide of the
BUFFALO POLICE DEPARTMENT,

                        Defendants.
_____

**AMENDED COMPLAINT**

Civil Action No.:10-CV-953

**JURY TRIAL
DEMANDED**

Plaintiff, by her attorneys HOGANWILLIG, for her Complaint against Defendants,

herein allege that:

### PARTIES and JURISDICTION

1.    Plaintiff Lynn Peters is a citizen of the United States of America, residing at 470

Southside Parkway, Buffalo, County of Erie, State of New York.

**H**OGAN**W**ILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.hoganwillig.com

2.      Upon information and belief, and at all relevant times stated herein, Defendant CITY OF BUFFALO was a municipal corporation organized and existing under the laws of the State of New York, with principal offices in the City of Buffalo, County of Erie, State of New York.

3.      Upon information and belief, and at all relevant times stated herein, Defendant BUFFALO POLICE DEPARTMENT was a department within Defendant CITY OF BUFFALO, which does not have a separate legal identity from Defendant CITY OF BUFFALO with principal offices in the City of Buffalo, County of Erie, State of New York.

4.      Upon information and belief, at all relevant times stated herein, Defendant COUNTY OF ERIE was a county organized municipal corporation, existing under the laws of the State of New York, with principal offices in the County of Erie, State of New York.

5.      Upon information and belief, and at all relevant times stated herein, Defendant FRANK J. CLARK, III ("CLARK"), was the Chief Assistant District Attorney of Erie County, State of New York, and subsequently elected as Erie County District Attorney

6.      Upon information and belief, at all relevant times Defendants JOSEPH MARUSAK ("MARUSAK") was an Assistant District Attorneys in the Office of District Attorney, County of Erie, State of New York.

7.      Upon information and belief, at all relevant times, Defendants CLARK and MARUSAK were acting within the scope of their employment with the Erie County District Attorney's Office.

8.      Upon information and belief, at all relevant times, Defendants CLARK and MARUSAK were acting under the color and pretense of the statutes, ordinances, regulations, customs, and usages of the State of New York.

HoganWillig
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600    Toll Free: 800.636.5255    Fax: 716.636.7606    www.hoganwillig.com

2

9.     Defendants CLARK and MARUSAK are being sued in their individual and official capacities.

10.     At all times referred to herein, Defendant COUNTY OF ERIE, by its agents, servants and representatives, was responsible for the operation, maintenance and control of the Erie County District Attorney's Office and the selection, training, supervision, evaluation and disciplining of Assistant District Attorneys in the Erie County District Attorney's Office.

11.     At all times referred to herein, Defendants CLARK and MARUSAK  acted on behalf of Defendant COUNTY OF ERIE and the State of New York municipal policymakers with the granted authority to: (a) act as an advocate for the People of the State of New York during criminal prosecutions; (b) as an officer of the Court, to disclose any exculpatory evidence discovered during the investigation and prosecution of individuals suspected or accused of crimes; (c) determine what evidence and testimony should be gathered, accumulated and presented at grand jury proceedings, hearings and at trial; (d) prepare criminal cases for indictment and trial; (e) ensure that relevant and material evidence is not withheld or falsified; (f) ensure that witnesses do not commit perjury or give inaccurate testimony; (g) ensure that criminal proceedings are handled ethically and in accordance with the laws and Constitutions of the State of New York and the United States; (h) refrain from disseminating extraneous statements to the press or public designed to harm a suspect's reputation and (i) ensure that criminal evidence is properly registered, stored, preserved, maintained and produced in a timely manner to a criminal defendant and/or her attorneys.

12.     Upon information and belief, and at all relevant times stated herein, Defendant DET. JAMES LONERGAN ("LONERGAN"), Defendant DET. MARK STAMBACH ("STAMBACH"), Defendant DET. MICHAEL D. LYONS ("LYONS"), Defendant DET. HENRY SMARDZ ("SMARDZ"), Defendant DET. ANGELO CANNIZZARO,

HoganWillig
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600    Toll Free: 800.636.5255    Fax: 716.636.7606    www.hoganwillig.com

3

("CANNIZZARO"), Defendant LT. JAMES D. RAUTENSTRAUCH ("RAUTENSTRAUCH") and Defendants JOHN DOES No. 1-5 were natural persons residing in the County of Erie, State of New York, were employed by the Defendants CITY OF BUFFALO and/or BUFFALO POLICE DEPARTMENT and participated in acts and/or omissions regarding the investigation into the murder of Crystallynn Girard.

13.     Upon information and belief, and at all relevant times stated herein, Defendant CHARLES T. FIERAMUSCA ("FIERAMUSCA") was a natural person residing in the County of Erie, State of New York and was employed by Defendants CITY OF BUFFALO and/or BUFFALO POLICE DEPARTMENT as Chief of Homicide for said Department.

14.     At all times hereinafter mention Defendants CITY OF BUFFALO and BUFFALO POLICE DEPARTMENT, through their agents, servants and representatives, including Defendants LONERGAN, STAMBACH, LYONS, SMARDZ, CANNIZARRO, RAUTENSTRAUCH, FIERAMUSCA and JOHN DOES 1-5,  were responsible for the unbiased investigation of crimes; the apprehension of proper suspects; the weighing of eyewitness evidence against alibi evidence; the pursuit and study of physical evidence; the providing of accurate information for prosecution to the Erie County District Office and other prosecutorial authorities;  giving truthful testimony at trial when required; revealing exculpatory evidence and refraining from withholding or falsifying evidence and making further inquiry when reasonable in criminal investigations and exercising independent judgment from the Erie County District Attorney's Office whenever warranted.

15.     Upon information and belief, and at all relevant times, Defendants LONERGAN, STAMBACH, LYONS, SMARDZ, CANNIZARRO, RAUTENSTRAUCH, FIERAMUSCA and JOHN DOES 1-5 were acting under the color and pretense of the statutes, ordinances, regulations, customs, and usages of the State of New York.

**HOGANWILLIG**
**Attorneys at Law**
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com

4

16.     That   Defendants   LONERGAN,   STAMBACH,   LYONS,   SMARDZ,
CANNIZARRO, RAUTENSTRAUCH, FIREAMUSCA and JOHN DOES 1-5 are being sued
herein in their individual and official capacities.

17.     This claim arises under the United States Constitution, particularly under the
provisions of the Fourth, and Fourteenth Amendments to the Constitution and under Federal law,
particularly under 42 U.S.C.A. § 1983 and 42 U.S.C.A. § 1985.

18.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

19.     At all relevant times stated herein, all activities giving rise to the instant action
occurred within the State of New York.

## BACKGROUND APPLICABLE TO ALL CLAIMS

20.     On and before February 14, 1993, Plaintiff resided at 195 Babcock Street in the
City of Buffalo, New York with her daughter Crystallynn Girard, age thirteen (13) and her son
Edward Girard, age eight (8).

21.     On February 14, 1993, Crystallynn Girard was found dead in her bedroom by the
Plaintiff.

22.     An autopsy was performed by an Associate Chief Medical Examiner for the Erie
County Medical Examiner's Office, at the request, upon information and belief, of the Erie
County District Attorney's Office, which determined that the cause of death was manual
strangulation. The Erie County Medical Examiner discovered a small amount of cocaine in
Crystallynn's blood, but made a medical determination at that time that it played no role in her
death.

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com

5

23.    Upon information and belief, an investigation was commenced into the cause and manner of death of Crystallynn Girard by police officers and investigators of Defendants CITY OF BUFFALO, BUFFALO POLICE DEPARTMENT and COUNTY OF ERIE, at the direction of the Erie County District Attorney's Office, including, but not limited to, Defendants CLARK and MARUSAK.

24.    During the investigation there was considerable evidence accumulated that tended to incriminate Dennis Donohue in the murder of Crystallynn Girard:

a)  it was undisputed that Plaintiff placed a call to 911 on February 13, 1993 at approximately 11:44-11:51 p.m. requesting police assistance in ejecting Dennis Donohue from her residence;

b) Upon information and belief Plaintiff's son Edward Girard and boyfriend Michael Nichter told police that Plaintiff stated that on the night in question she had been threatened by Mr. Donohue and that Plaintiff told Mr. Donohue to stay away from her kids;

c) a neighbor gave police a statement in which she testified that Plaintiff called her up at 4:45 a.m. and asked her to check up on Crystallynn Girard and that Mr. Donohue was out to hurt Crystallynn;

d) Crystallynn's panties were found on the living room floor and her body was lying on the bed naked except for a pair of socks;

e) blood was found on the shirt Mr. Donohue was wearing that night;

f) blood was found on a knife in Mr. Donohue's apartment;

g) in his statement taken on February 15, 1993, Michael Nichter testified that on February 14, 1993, at 2:30 a.m. Mr. Donohue came into the Babcock Grill and Lynn told him to go away and that she did not want to see him anymore.  After an extended conversation Mr. Donohue attempted to drag her out of the bar. Mr. Donohue left the bar only to come back a few

HoganWillig
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600    Toll Free: 800.636.5255    Fax: 716.636.7606    www.hoganwillig.com

6

minutes later and went into the kitchen.  He and Lynn left the bar only to be confronted by Mr. Donohue as they attempted to drive away.  Mr. Donohue reached into the car, grabbed the witness by the hair and slammed his head against the steering wheel.  He then got into his car and followed them to the corner of Seneca and Cazenovia, where the witness displayed his gun in an attempt to get Mr. Donohue to back off. Plaintiff and the witness then went to La-Boom Nightclub, then headed to his house, where Mr. Donohue came out of nowhere, grabbed him and pinned him against the house. Lynn then told Mr. Donohue she didn't want to see him anymore and that he should stay away from her kids;

h) In his statement taken on February 14, 1993, Dennis Donohue admitted that after attending a wedding on the evening of February 13, 1993, he got into an argument with Plaintiff and followed her home.  He admitted that Plaintiff called the police and that he knocked the phone out of Plaintiff's hands.  He admitted that he followed Plaintiff and Mr. Nichter after seeing them socialize in the Babcock Grill. He admitted that he followed them to the LaBoom Nightclub in West Seneca then to Mr. Nichter's house, pulled a Swiss Army knife on Mr. Nichter, held to it his throat and tried again to talk to Lynn;

i) Plaintiff gave a statement on February 14, 1993 essentially consistent with the account of Michael Nichter, with the additional fact that Mr. Donohue held a knife to Mr. Nichter's throat during the confrontation at Mr. Nichter's house;

j) Mr. Donohue had no alibi for the time after his confrontation with Michael Nichter and the Plaintiff

25.    Mr. Donohue had been a suspect in the strangulation murder of Carol Reed in 1977, a murder in which the victim, much like Crystallynn Girard was found strangled, naked, and lying on her back, and which was never resolved by an arrest.

HoganWillig
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com

7

26.     Despite the foregoing, Mr. Donohue was permitted to testify before the Grand Jury by Defendants MARUSAK and CLARK, granting transactional immunity to Mr. Donohue.

27.     Upon information and belief, at the time of the Crystallynn Girard murder, Mr. Donohue was working as a bartender in a bar co-owed by an officer of the BUFFALO POLICE DEPARTMENT.

28.     On or about December 13, 1993, Plaintiff LYNN PETERS, then known as Lynn DeJac, was indicted by the Grand Jury of Erie County, by Indictment Number 0039-1993 and charged with two counts of murder in the second degree of her daughter, Crystallynn Girard, by manual strangulation and two counts of first degree manslaughter.

29.     On or about April 20, 1994, Plaintiff, Lynn Peters was convicted of second degree murder for the strangulation of her daughter, Crystallynn Girard.

30.     On or about June 7, 1994, Plaintiff Lynn Peters was sentenced to imprisonment for life with a minimum of twenty-five (25) years of incarceration.

31.     Following Plaintiff's conviction and sentencing, Plaintiff was confined to the Bedford Hills Correctional Facility where she remained throughout her incarceration of over thirteen and one half (13 ½ years), except for a forty-five (45) day period of confinement in the Central New York Psychiatric Center in Marcy, New York.

32.     In September 2007, a cold case investigation re-examining trial evidence and physical evidence of the crime scene, revealed through forensic testing of bloodstains found on the wall of Crystallynn's bedroom, her bedding, and inside her vagina, the presence of DNA of Mr. Donohue.

33.     On November 28, 2007, the Honorable Michael D'Amico, Supreme Court Justice, with appropriate authority vacated the conviction against the Plaintiff and Plaintiff was released from prison that same day, pending a new trial.

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com

8

34.     After the new DNA evidence came to light, Defendant CLARK requested that an independent Medical Examiner review the autopsy records, purportedly to pinpoint the time of death.

35.     On February 13, 2008, Defendant CLARK held a press conference in which he announced that two independent medical examiners had determined that Crystallynn Girard had not died from a homicidal act, but an accidental cocaine overdose and the cause of death on Crystallynn's death certificate was changed accordingly.

36.     On February 28, 2008, the indictment was dismissed.

37.     That for the entire length of her incarceration, Plaintiff had maintained her innocence and that she was convicted of a crime she did not commit.

## AS AND FOR A FIRST CLAIM AGAINST DEFENDANTS: DEPRIVATION OF PLAINTIFF'S CIVIL RIGHTS DURING THE INVESTIGATION OF THE CRYSTALLYNN GIRARD MURDER

38.      Plaintiff repeats and realleges each and every allegation as set forth in this Complaint in paragraphs 1 through 38 as though set forth at length herein.

39.     Upon information and belief, there was a policy, practice and custom of the Defendant COUNTY OF ERIE and Erie County District Attorney's Office to take an active part in and exert inordinate control the murder investigations of the Defendants CITY OF BUFFALO and BUFFALO POLICE DEPARTMENT and a corresponding policy, practice and custom of Defendants CITY OF BUFFALO and BUFFALO POLICE DEPARTMENT to permit the Erie County District Attorney's Office to direct and control their investigations, including, but not limited to, what evidence gets tested, what witness to question, and the role polygraph tests take in eliminating suspects.

**HoganWillig**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
Phone: 716.636.7600    Toll Free: 800.636.5255    Fax: 716.636.7606    www.hoganwillig.com

9

40.    As a result of the aforesaid policy and practice, upon information and belief, Defendants MARUSAK, CLARK and FIERAMUSCA instructed the detectives and investigators to focus their investigation of the murder of Crystallynn Girard on the Plaintiff as the suspect, to the exclusion of other reasonable and potential suspects.

41.    At the direction of Defendants MARUSAK and CLARK, Dennis Donohue underwent a screening polygraph, which Mr. Donohue allegedly passed and Defendants MARUSAK and CLARK did not order any additional polygraph of Mr. Donohue.

42.    Despite the well known fact that a significant percentage of polygraph tests result in false positives and negatives, upon information and belief, Defendants MARUSAK and CLARK decided, solely on the basis of the screening test, to rule out Mr. Donohue as a suspect and to permit him to testify before the Grand Jury, thus granting transactional immunity to him.

43.    The decision to rule out Mr. Donohue as a suspect was reached even though:

a)  There was no physical evidence linking Plaintiff to the crime;

b)  No credible motive was ever established for the crime;

c)  Defendants' theory that Crystallynn was murdered after the 911 call was made and before Plaintiff arrived at the Babcock Grill and that the body was stripped naked by the Plaintiff in an attempt to cover up the crime was and is physically impossible; as that would have required Plaintiff to get into an argument with her daughter, overpower her daughter, (who was bigger than Plaintiff at that time), and choke Crystallynn for a sufficient amount of time to kill her (which, according to the trial testimony, was at least five minutes),  then get a rolling pin, presumably from the kitchen, and use it to strike her daughter's body in the head, cut the breast of her daughter's body with a sharp object, undress the body, except for the socks, drag the body from the living room to her bed (as her daughter's panties were found on the living room floor), wipe off her fingerprints from the body and scene of the crime, put on her coat and other outer

HoganWillig
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com

10

clothes and make the five minute walk to the Babcock Grill, all in a fourteen (14) minute time frame, and all during a time when she was, by all accounts, intoxicated;

d) There were no fingernail marks on Crystallynn's throat, while Plaintiff indisputably had long fingernails;

e) Michael Nichter testified that at approximately 5:00 a.m. on February 14, 1993 he and Plaintiff went to Plaintiff's house and that Plaintiff went into Crystallynn's bedroom and said something to Crystallynn and he heard someone mumble something, whereupon Plaintiff put a phone and dog in her room and left the house;

f) None of the neighbors interviewed on February 14, 1993 by police testified they saw or heard anything suspicious other than an argument at a time consistent with the time Mr. Donohue had entered the house without permission; and

g) Not one of the witnesses stated that Plaintiff had ever been abusive to Crystallynn.

44.    Upon information and belief, there were multiple samples of DNA collected from the crime scene, including from bloodstains found on the wall of Crystallynn's bedroom, her bedding, and inside her vagina.

45.    As previously stated, the DNA samples were finally tested in 2007, and ultimately, established the presence of the DNA of Dennis Donohue in the bloodstains, including the sample found from inside her vagina.

46.    Upon information and belief, Defendants MARUSZAK and CLARK directed in 1993 that the DNA samples not be tested.

47.    Similarly, upon information and belief, Defendants MARUSZAK and CLARK ordered in 1993 that Mr. Donohue's blood stained shirt from the night in question that Defendant

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com

11

BUFFALO POLICE DEPARTMENT had obtained from Mr. Donohue's apartment not be tested.

48.    On February 14, 1993 Dennis Donohue voluntarily informed Det. John Vickerd of the BUFFALO POLICE DEPARTMENT that he was willing to submit a DNA sample.

49.    Defendants, under the direction and orders of Defendants FIERMUSCA, MARUSZAK and CLARK failed and refused to gather the DNA sample, and such DNA evidence was not available during Plaintiff's criminal trial.

50.    The Defendants exhibited a reckless disregard for the truth and bad faith by failing to properly test and analyze the physical evidence related to the murder of Crystallynn Girard, including performing a DNA analysis of the above referenced evidence and in failing to collect Mr. Donohue's DNA despite his having given permission for such collection.

51.    Upon information and belief, had these samples been tested, and matched against Mr. Donohue's DNA samples the ensuing results would have been exactly what was demonstrated in the year 2007, after the DNA of Mr. Donohue was collected in connection with the strangulation murder of Joan Giambra – that Mr. Donohue's DNA was present at the crime scene of Crystallynn's murder as well as inside the victim's body.

52.    At the time of the investigation and subsequent criminal trial, DNA analysis was readily available and used by prosecuting attorneys, and was a common practice and procedure.

53.    The failure of Defendant BUFFALO POLICE DEPARTMENT to request and obtain DNA sampling from Dennis Donohue and their failure to compare the DNA of Dennis Donohue with DNA found at the scene of the crime evidenced Defendant's lack of good faith in conducting the investigation of Crystallynn Girard's murder, in that Defendants failed to thoroughly investigate all possible suspects.

HoganWillig
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com

12

54.     During the month of October 1993, Wayne Hudson was arrested by officers of Defendant BUFFALO POLICE DEPARTMENT and faced felony charges that would have resulted in a twenty-five (25) years to life sentence due to two prior felony convictions.

55.     On or about October 12, 1993, while at Central Booking, Wayne Hudson approached an investigator for the Erie County District Attorney's Office, Cliff Braxton, told him that he didn't want to go to jail and inquired what could be done for him in return for information on the Crystallynn Girard murder.

56.     On the aforesaid date Mr. Braxton told Mr. Hudson he would see what he could do and spoke to the First Assistant District Attorney, Defendant CLARK, who directed that the BUFFALO POLICE DEPARTMENT take his statement.

57.     On the aforesaid date, Mr. Braxton relayed that message to Defendant FIERMUSCA, who told Mr. Braxton to bring Mr. Hudson to Defendant LONERGAN.

58.     When Mr. Braxton returned to Mr. Hudson, Mr. Braxton asked him what information he had.

59.     Upon information and belief, Mr. Hudson replied that Lynn DeJac admitted to him that she had strangled her daughter.

60.     Mr. Braxton took Mr. Hudson to Defendant LONERGAN to take his statement.

61.     In his statement Mr. Hudson claimed that on an unspecified night about two and one half months after the murder at some time between 10 a.m. and 12 midnight, Plaintiff and Mr. Hudson had an extended conversation in which she confessed to strangling her daughter, even going so far as to physically demonstrate how she did it.  He claimed that she told him she did it because she had been doing a lot of cocaine and drinking. He claimed that she told him that she was inside the house when the police came in answer of the 911 call and she didn't answer

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com

13

62.    Upon information and belief, Mr. Braxton then went to Defendant CLARK and told him that he strongly felt that Mr. Hudson was lying.

63.    Despite Mr. Braxton's expressed reservations about Mr. Hudson's veracity and despite the failure of Mr. Hudson to clearly identify the time and date this alleged confession took place, despite the fact that other witnesses placed Plaintiff outside the house at the time the police came to her door, despite the fact that there was no evidence that Plaintiff had used cocaine on the evening of February 13, 1993, despite the fact that the crime he was charged with (i.e. forgery) implicated his credibility as a witness and despite the obvious motive Mr. Hudson had to testify falsely, Defendants used his statement and utilized his testimony before the Grand Jury and at trial without any attempt to verify or corroborate his account.

64.    That the testimony of Wayne Hudson was self serving and false, would have proven to have been perjured upon the most superficial investigation and was not presented in good faith.

65.    There was absolutely no objective evidence corroborating Wayne Hudson's statement.

66.    Subsequent to the trial of Plaintiff, and after Defendant MARUSAK falsely represented to the jury that a plea bargain that would result in no jail time to Wayne Hudson would be impossible, and that the only consideration for Mr. Hudson's testimony was that he was released upon his own recognizance, Defendants MARUSAK and CLARK after the trial dismissed the pending felony forgery charges, and permitted Mr. Hudson to plea to a misdemeanor.

HoganWillig
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com

14

67.    Upon information and belief, this arrangement had been worked out beforehand by Defendants MARUSAK and CLARK.

68.    That the facts concerning this arrangement were improperly and unlawfully withheld from Plaintiff's defense attorney prior to and during the trial.

69.    Upon information and belief, Defendants acting under color of state law, wrongfully arrested and detained the Plaintiff pursuant to legal process knowing: (a) that the alleged "confession" by the Plaintiff to Wayne Hudson, a two time felon with a pending third felony that directly imputed his credibility as a witness, (b) that they had collected physical evidence which included blood stains on Dennis Donohue's shirt and DNA samples from the blood stains on the wall of the crime scene and the victim's bedding and her vagina, and failed or refused to test the evidence; (c) that Dennis Donohue admitted to assaulting another individual and stalking the Plaintiff the night of Crystallynn's murder; (d) that Dennis Donohue had no alibi for the time of Crystallynn's murder; (e) that cocaine was found in Crystallynn's blood and that Dennis Donohue admitted to using cocaine the night she was killed; and (e) that there was a lack of physical evidence or motive connecting Plaintiff to the crime. In short, the aforementioned individuals knew or should have known that they did not have probable cause for an arrest, detention and prosecution of Plaintiff.

70.    That under the circumstances prevailing at the time of the arrest there was no reasonable basis for the arrest, prosecution and detention of the Plaintiff on the aforesaid charge.

71.    That by virtue of the aforesaid acts and omissions during the investigation of the murder of Crystallynn Girard, Defendants failed to conduct a constitutionally adequate investigation for the crimes for which Plaintiff was charged and employed procedures in the aforesaid investigation that violated Plaintiff's Constitutional rights.

**HoganWillig**
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com

15

72.     That the aforesaid arrest and imprisonment of the Plaintiff was in direct violation of Plaintiff's clearly established right under the Fourth, Fifth, Sixth Amendments of the United States Constitution, as applied to the States by the Fourteenth Amendment to the Constitution, as well as the Fourteenth Amendment itself to be secure against unreasonable seizure of his person, to be free from a bad faith prosecution, to a fair trial and to be free from deprivation of liberty without due process of law.

73.     That as a direct and proximate result of the foregoing, Plaintiff was greatly injured both physically and mentally, was subjected to humiliation and embarrassment, was deprived of the custody and care of her children and was obliged to and did expend large sums of money to procure the ultimate dismissal of the charges against her after serving over thirteen years in prison, and demands TWENTY MILLION DOLLARS ($20,000,000.00) in compensatory damages plus TEN MILLION DOLLARS ($10,000,000.00) punitive damages against the individual Defendants.

## AS AND FOR A SECOND CLAIM AGAINST DEFENDANTS: DEPRIVATION OF PLAINTIFF'S CIVIL RIGHTS DURING THE PROSECUTION AND INCARCERATION OF PLAINTIFF

74.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs "1" through "73" inclusive with the same force and effect as if set forth at length herein.

75.     Defendants, acting under color of state law, and by virtue of the wrongful arrest and biased investigation, commenced criminal proceedings against the Plaintiff.

76.     That the trial of Plaintiff was marked by bad faith in the presentation of evidence and as a result, Plaintiff was maliciously prosecuted by Defendants in a manner that violated Plaintiff's right to due process under the law.

HoganWillig
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600    Toll Free: 800.636.5255    Fax: 716.636.7606    www.hoganwillig.com

16

77.    That at trial Defendant LYONS testified that during the investigation he found a rolling pin and bloody towel at the scene of the crime and that nobody pointed out the rolling pin to him.

78.    Such testimony was false and was directly contradicted by the police report signed by Defendant LYONS, which stated that it was Plaintiff who brought the rolling pin and bloody towel to the attention of Defendant LYONS and that Defendant LYONS was not at the crime scene when this occurred.

79.    Upon cross-examination, Defendant LYONS admitted that he didn't order the rolling pin and bloody towel to be picked up when he first saw them, but never admitted that Plaintiff had called him to bring this evidence to his attention, leaving the jury to infer that Plaintiff had left the evidence behind during the murder of Crystallynn Girard.

80.    That at trial Defendant MARUSAK was faced with the difficulty of explaining why Crystallynn's body was found naked if the murder was the result of a mother-daughter quarrel.

81.    Upon information and belief Defendants MARUSAK, LYONS and SMARDZ conspired to have LYONS and SMARDZ testify that Crystallynn's body was wet when it was discovered, in support of a theory that she was attacked while she was taking a shower, or alternatively that Plaintiff washed off her fingerprints from her body.

82.    At trial, Defendant LYONS and SMARDZ falsely testified that Crystallynn's body was wet.

83.    This contention had no support in the police records, notes, police photographs of the body taken at the scene nor of the other witnesses who saw the body.

HoganWillig
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600    Toll Free: 800.636.5255    Fax: 716.636.7606    www.hoganwillig.com

17

84.    In his closing statement Defendant MARUSAK disingenuously pointed to an ambiguous photograph of a blood-stained mattress as conclusive evidence that Crystallynn's body was wet.

85.    That a former boyfriend of Plaintiff, Keith Cramer was convinced to testify against Plaintiff by, upon information and belief, Defendant DET. ANGELO CANNIZZARO, after he told Mr. Cramer, without any evidence to back up his statements, that a woman committed the murders, among other misinformation given to Mr. Cramer.

86.    That upon information and belief, Keith Cramer gave Defendants a full account of certain conversations he had on February 14, 1993.

87.    That in his testimony at trial, Keith Allen Cramer testified that Lynn Dejac during a telephone conversation shortly after midnight on February 14, 1993 told him that she could never go home again.

88.    That this testimony was false and misleading in that Mr. Cramer omitted that Lynn stated that the reason she couldn't go home was that she was afraid of Dennis Donohue.

89.    Upon information and belief, Defendants knew that this testimony was not the whole truth and the entire statement would be exculpatory evidence and withheld this evidence from Plaintiff's criminal attorney.

90.    That in his testimony at trial, Keith Cramer testified that on the date of the incident he told Plaintiff that he thought that she killed her daughter and that she didn't reply and looked out the window.

91.    That this testimony was false and misleading in that Plaintiff, rather than looking out the window, gave Mr. Cramer a look of disgust and disbelief.

HoganWillig
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com

18

92.    Upon information and belief, Defendants knew that this testimony was fabricated and accurate testimony from Mr. Cramer would be exculpatory evidence and withheld this evidence from Plaintiff's criminal attorney.

93.    That in the year 2007, Keith Cramer recanted his trial testimony and revealed publically what he had omitted from his testimony.

94.    In 1995, Plaintiff appealed her conviction, based upon newly discovered evidence regarding Mr. Donohue's involvement with the Reed murder, the contention that the verdict was against the weight of the evidence and the claim that the evidence was not legally sufficient to support her conviction.

95.    That on February 2, 1996, the New York State Supreme Court Appellate Division, Fourth Department affirmed the Judgment of conviction, basing its opinion in significant part on the false and misleading trial testimony of Mr. Cramer regarding Plaintiff's behavior and statements on the night in question.

96.    That during the trial certain photographs of Crystallynn's neck were not disclosed to her attorney until well after the trial.

97.    There photographs show no evidence of marks from long fingernails, but did depict what appears to be large thumb prints or marks on Crystallynn's neck inconsistent with the size of Lynn Dejac's thumbs, but consistent with thumbs of a large sized male.

98.    Prior to trial, Defendants improperly made misleading public statements to the media concerning statements allegedly made by Plaintiff to friends and relatives, and pressured and influenced potential witnesses with false information and their assertions of their belief that Plaintiff murdered her daughter, a belief either feigned to protect the real perpetrator, Dennis Donohue, or if sincere, founded only upon their personal dislike of Plaintiff and her lifestyle.

HoganWillig
**Attorneys at Law**
**2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068**
Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com

19

99.    Defendants further attempted to poison the potential jury pool by public statements that they feared that Plaintiff was about to flee, a statement that bore no relation to fact.

100.    During the cold case investigation of the Crystallynn Girard murder, members of the Cold Case squad attempted to contact Katie Harrington, a friend of the victim who testified at trial.

101.    Defendant MARUSAK, who was now working as an attorney in private practice, learned of this inquiry and contacted Defendants BUFFALO POLICE DEPARTMENT and CLARK (who now was the elected District Attorney) who, acting under color of State Law, pressured Detective Dennis Delano and other members of the squad to terminate any such inquiries, Defendant MARUSAK, upon information and belief, going so far as to undertake the representations of said witness, despite his obvious vested interest in said witness not changing her story.

102.    During the cold case investigation of the Crystallynn Girard murder, members of the cold case squad, following indications that Wayne Hudson may wish to recant his testimony, contacted Wayne Hudson, and requested an interview, and Mr. Hudson initially agreed.

103.    Soon afterward Detective Delano learned that Defendants CLARK and persons under Clark's control and at Clark's behest, contacted Mr. Hudson, and compelled him to sign a statement reaffirming his prior statement, thus restarting the statute of limitations on perjury, and Mr. Hudson indicated that he would not be recanting his testimony.

104.    The actions by Defendants MARUSAK and CLARK obstructed the cold case investigation and prolonged the wrongful incarceration of Plaintiff.

105.    That the malicious prosecution conducted by Defendants acting under color of state law, was in direct violation of Plaintiff's clearly established right under the Fourth, Fifth,

HoganWillig
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600    Toll Free: 800.636.5255    Fax: 716.636.7606    www.hoganwillig.com

20

Sixth Amendments of the United States Constitution, as applied to the States by the Fourteenth Amendment to the Constitution, as well as the Fourteenth Amendment itself to be secure against unreasonable seizure of his person, to be free from a bad faith prosecution, to a fair trial and to be free from deprivation of liberty without due process of law.

107.     That as a result of the foregoing, Plaintiff was greatly injured both physically and mentally, was subjected to humiliation and embarrassment, was deprived of the custody and care of her children and was obliged to and did expend large sums of money to procure the ultimate dismissal of the charges against her after serving over thirteen years in prison, and demands TWENTY MILLION DOLLARS ($20.000,000.00) in compensatory damages plus TEN MILLION DOLLARS ($10,000,000.00) punitive damages against the individual Defendants.

## AS AND FOR A THIRD CLAIM AGAINST DEFENDANTS CLARK AND MARUSAK: CONSPIRACY TO DEPRIVE PLAINTIFF OF HER CIVIL RIGHTS

108     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs "1" through "107" inclusive with the same force and effect as if set forth at length herein.

109.   During the year 2007, members of the cold case squad of the Buffalo Police Department, having discovered striking similarities in the murders of Carol Reed, Crystallynn Girard and Joan Giambra murders, began an investigation into the circumstances underlying the Crystallynn Girard murder.

110.   In 2007, as part of their investigation, the cold case squad attempted to contact Katie Harrington, who was Crystallynn's best friend before her death and who had testified at trial concerning Plaintiff's whereabouts.

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com

21

111.    Defendants MARUSAK and CLARK became aware of these inquires and entered into a conspiracy to obstruct the investigation and keep Plaintiff in prison in violation of her civil rights.

112.    In furtherance of this conspiracy on October 8, 2007, Defendants contacted Deputy Police Commissioner Daniel Derenda and Chief of Detectives Dennis Richards and by threat and intimidation convinced them to order any attempts to contact Ms. Harrington to cease immediately.

113.    As a result of the actions of said Defendants, members of the Cold Case squad were prevented from discharging their duties in violation of 42 USC § 1985 (a) which hindered the investigation and prolonged Plaintiff's unconstitutional and wrongful imprisonment.

114.    Upon information and belief in furtherance of the conspiracy, Defendant CLARK attempted to intimidate witness Keith Cramer after he publically recanted his testimony on November 20, 2007, by threatening perjury charges against him even though the statute of limitations had run.

115.    Members of the Cold Case Squad learned that Wayne Hudson was considering recanting his testimony against Plaintiff and a member of the Cold Case Squad set up a meeting with Mr. Hudson to discuss his case.

116.    Prior to the meeting, in furtherance of the conspiracy Defendant CLARK and persons under Clark's control and at Clark's behest, contacted Mr. Hudson and used threats and intimidation to compel him to sign a statement reaffirming his prior statement and trial testimony.

117.    The only genuine purpose of the 2007 statement was to renew the statute of limitations for perjury, preventing him from recanting his former testimony.

HoganWillig
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com

22

118.    After signing the statement, Mr. Hudson called the Buffalo Police Detective who scheduled the appointment and told him that he didn't have to cooperate with him.

119.    As a result of the aforesaid actions of said Defendants, members of the Cold Case squad were prevented from discharging their duties in violation of 42 USC § 1985 (a) and which hindered the investigation and prolonged Plaintiff's unconstitutional and wrongful imprisonment.

120.    These actions, which took place after evidence began mounting against Dennis Donohue, were motivated by animus of the Defendants toward women.

121.    Said Defendants were so outraged by what they considered to be neglectful parenting on the part of Plaintiff and by her lifestyle at the time of the murder that they became obsessed with the idea that Plaintiff was a cold blooded killer and would not even consider that the man who stalked Plaintiff and her family the entire night, who had motive, opportunity and no alibi after 5:00 a.m. could have killed Crystallynn Girard.

122.    Defendant MARUSAK was filled with so much animosity toward Ms. Dejac that he started a blog after DNA evidence had cleared her of the crime, the  sole purpose of which was to insist that Plaintiff murdered her daughter despite all the evidence that cleared her name.

123.    That the conspiracy to violate Plaintiff's civil rights by the aforesaid Defendants acting under color of state law, resulted in the direct violation of Plaintiff's clearly established right under the Fourth, Fifth, Sixth Amendments of the United States Constitution, as applied to the States by the Fourteenth Amendment to the Constitution, as well as the Fourteenth Amendment itself to be secure against unreasonable seizure of his person, and to be free from deprivation of liberty without due process of law and prolonged the Unconstitutional and wrongful detention of Plaintiff.

124.    As a result of the foregoing Plaintiff was greatly injured both physically and mentally, was subjected to humiliation and embarrassment, was deprived of the custody and care

HOGANWILLIG
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600    Toll Free: 800.636.5255    Fax: 716.636.7606    www.hoganwillig.com

23

of her children and was obliged to and did expend large sums of money to procure the ultimate dismissal of the charges against her after serving over thirteen years in prison, and demands TWENTY MILLION DOLLARS ($20,000,000.00) in compensatory damages plus TEN MILLION DOLLARS ($10,000,000.00) punitive damages against the individual Defendants,

## JURY DEMAND

Plaintiff Lynn Peters hereby demands trial by jury on of the above issues.

WHEREFORE, Plaintiff demands JUDGMENT against Defendants as follows:

I.      For compensatory damages in the amount of TWENTY MILLION DOLLARS ($20,000,000.00);

II.      For TEN MILLION DOLLARS ($10,000,000) in punitive damages against the individual Defendants

III.      For reasonable attorneys' fees, together with costs and disbursements of this action pursuant to 42 U.S.C. § 1988 and the inherent powers of this Court;

IV.      For pre-judgment interest, as allowed by law; and

V.      For such other and further relief as the Court may determine as just and proper.

DATED:      January 5, 2010
            Amherst, New York

Respectfully submitted,

*s/Steven M. Cohen, Esq.*

_____
Steven M. Cohen, Esq.
HOGANWILLIG
*Attorneys for Plaintiff*
2410 North Forest Road, Suite 301
Amherst, New York 14068
(716) 636-7600
scohen@hoganwillig.com

HoganWillig
Attorneys at Law
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com

24