UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LYNN PETERS f/k/a LYNN M. DEJAC,

                          Plaintiff,

        v.                                          **DECISION AND ORDER**
                                                    10-CV-953S
CITY OF BUFFALO, et al.,


                          Defendants.


## I. INTRODUCTION

Plaintiff Lynn Peters, formerly known as Lynn M. Dejac, brings this action pursuant to 42 U.S.C. §§ 1983 and 1985, alleging violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments.  Plaintiff's claims arise out of the alleged deprivation of her civil rights during the investigation of, and her subsequent prosecution for, the murder of Crystallynn Girard.  Presently before this Court is Defendant County of Erie's Motion to Dismiss (Docket No. 5), Defendants Frank J. Clark, III and Joseph J. Marusak's Motion to Dismiss (Docket No. 25), and Plaintiff's Cross-Motion to Amend the Complaint (Docket No. 38).[1]

As an initial matter, this Court must address Plaintiff's motion to amend her complaint.  The proposed amended complaint adds no new claims but does significantly expand on the factual allegations raised against Clark and Marusak, as well as clarify the

---

[1]In support of its motion, the County filed a Declaration by Brian R. Liebenow, Esq.; and a Memorandum of Law.  (Docket Nos. 6, 7.)  In opposition, Plaintiff filed a Declaration by Steven M. Cohen, Esq.; and a Memorandum of Law.  (Docket Nos. 13, 14.)
    In support of their Motion to Dismiss, Defendants Marusak and Clark also filed a Declaration by Brian R. Liebenow, Esq.; and a Memorandum of Law.  (Docket Nos. 26, 27.)  Plaintiff opposed Defendants' motion by filing an Amended Complaint; another Declaration by Steven M. Cohen, Esq.; and a Memorandum of Law.  (Docket No. 39.)

capacity in which they are being sued.

District courts have broad discretion to grant a party leave to amend its pleadings and the federal rules dictate that leave to amend is freely granted when justice so requires. See Fed. R. Civ. P. 15 (a)(2).  The proposed amendment adds certain factual allegations and expands on others.  No defendant has filed an opposition to Plaintiff's cross-motion. Similarly, no replies have been filed pursuant to the motions to dismiss resisting Plaintiff's proposed amendments.  Accordingly, Defendants have provided no grounds on which they would be prejudiced.  Further, this Court finds that at this early stage of the litigation there is no undue prejudice to defendants that would preclude amendment of the complaint. Having so found, and for the sake of efficiency and expediency, this Court will grant leave to amend and resolve the two motions to dismiss as against the second amended complaint.

Having so considered the motions to dismiss, and for the following reasons, Defendants' motions are denied.


## II. BACKGROUND

**A.     Facts**

This case originates with the death of Crystallynn Girard, and the discovery of her body on February 14, 1993.  (Second Amended Complaint ("Comp.") ¶ 21, Docket No. 39-1.)  Girard was the daughter of Plaintiff, Lynn Peters, then known as Lynn M. Dejac. (Comp. ¶ 20.)   Her death was investigated by police officers and investigators of Defendants, the City of Buffalo, the Buffalo Police Department, and the County of Erie (the "County" or "Erie County").

2

Evidence discovered in the course of this investigation implicated Dennis Donohue, a bartender who worked in an establishment co-owned by an officer in the Buffalo Police Department.  (Comp. ¶ 27.)  Allegedly ignoring various evidence pointing to Donohue as the true culprit, Defendants instead focused their investigation on Peters.  This focus was allegedly the result of efforts by Defendants First Deputy Erie County District Attorney, and later Erie County District Attorney, Frank J. Clark, III, Assistant Erie County District Attorney Joseph J. Marusak, and Chief Charles T. Fieramusca.  (Comp. ¶¶ 41, 120.)  In doing so, Clark and Marusak were allegedly acting pursuant to a policy, practice, and custom of the City of Buffalo and the Buffalo Police Department to permit the Erie County District Attorney's Office to direct and control investigations, and for the District Attorney's' Office to do so.  (Comp. ¶ 39.)  Among the numerous ways Defendants Clark and Marusak allegedly acted improperly were ordering an incomplete polygraph test of Donahue, directing that DNA samples not be tested, relying on a non-credible witness, misrepresenting evidence concerning other witnesses, and making misleading public statements.  (Comp. ¶¶ 46, 47, 53, 54, 56, 72, 80, 116.)

An indictment was issued on December 13, 1993 charging Peters with two counts of murder in the second degree and two counts of first degree manslaughter.  (Comp. ¶ 28.)  A jury found Peters guilty of second degree murder on April 20, 1994.  (Comp. ¶ 29.)  Peters was sentenced to life imprisonment with a minimum prison term of 25 years.  (Comp. ¶ 30.)  An appeal of conviction followed in 1995.  (Comp. ¶ 112.)  The New York State Supreme Court Appellate Division for the Fourth Department affirmed Peters' conviction on the basis of testimony that Defendants allegedly knew was fabricated and inaccurate.  (Comp. ¶¶ 110, 113.)

3

In September 2007, a cold case investigation unit re-examined evidence admitted at trial, as well as physical evidence from the crime scene.  (Comp. ¶ 32.)  Clark and Marusak, as well as Defendant Detective Mark Stambach allegedly impeded this investigation by contacting one witness, Wayne Hudson, and compelling him to sign a statement reaffirming his prior statements, and threatening another witness, Keith Cramer.  (Comp. ¶¶ 120, 133.)  Defendants also allegedly threatened Deputy Police Commissioner Daniel Derenda and Chief of Detectives Dennis Richards into ceasing attempts to contact witnesses.  (Comp. ¶¶ 123, 131.)  Despite these obstacles, the cold case investigation revealed the presence of Donohue's DNA at the crime scene.  (Id.)  Peters' conviction was vacated on November 28, 2007, by the Honorable Michael D'Amico, New York State Supreme Court Justice.  (Comp. ¶ 33.)  Peters was released pending a new trial.  (Id.)

An independent medical examination was conducted of Crystallynn's autopsy records, at Defendant Clark's request.  (Comp. ¶ 34.)  A press conference held on February 13, 2008 revealed that two  independent medical examiners had determined that Girard died from an accidental cocaine overdose.  (Comp. ¶ 35.)  The then-pending indictment against Peters was dismissed on February 28, 2008.  (Comp. ¶ 36.)

## B.    Procedural History

Plaintiff commenced this action on November 24, 2010 by filing a complaint in the United States District Court for the Western District of New York.  (Docket No. 1.)  On January 5, 2011, Plaintiff amended her complaint. (Docket No. 3.) Defendant Erie County filed its Motion to Dismiss on February 3, 2011.  (Docket No. 5.)  Defendants Marusak and Clark followed suit, and filed their Motion to Dismiss on March 15, 2011.  (Docket No. 25.)  Plaintiff responded with a Cross-Motion to Amend Complaint on April 1, 2011.  (Docket No.

38.)  The parties briefs were deemed submitted on April 11, 2011, at which time this Court

took the parties' motions under advisement without oral argument.


### III. DISCUSSION

**A.     Motion to Dismiss Standard**

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which

relief can be granted."  Fed. R. Civ. P. 12 (b)(6).  Federal pleading standards are generally

not stringent: Rule 8 requires only a short and plain statement of a claim.  Fed. R. Civ. P.

8 (a)(2).  But the plain statement must "possess enough heft to show that the pleader is

entitled to relief."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1966, 167 L.

Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it

liberally, accept all factual allegations as true, and draw all reasonable inferences in the

plaintiff's favor.  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

Legal conclusions, however, are not afforded the same presumption of truthfulness.  See

Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)  ("The

tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 129 S. Ct.

at 1945 (quoting Twombly, 550 U.S. at 570).  Labels, conclusions, or a "formulaic recitation

of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555. Facial

plausibility exists when the facts alleged allow for a reasonable inference that the

defendant is liable for the misconduct charged. Iqbal, 129 S. Ct. at 1949. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id. at 1950; Fed. R. Civ. P. 8 (a)(2). Well-pleaded allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

Courts therefore use a two-pronged approach to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). This examination is context specific and requires that the court draw on its judicial experience and common sense. Iqbal, 129 S. Ct. at 1950. First, statements that are not entitled to the presumption of truth – such as conclusory allegations, labels, and legal conclusions – are identified and stripped away. See Iqbal, 129 S. Ct. at 1950. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id.

## B.    Defendants Clark and Marusak's Motion to Dismiss

Defendants Clark and Marusak contend that they are entitled to immunity under the Eleventh Amendment to the extent suit is brought against them in their official capacities as district attorneys. As to any claims brought against them in their individual capacities, Clark and Marusak assert that they are entitled to absolute prosecutorial immunity. Finally, even if prosecutorial immunity were found not to apply, Defendants contend that their actions would still be protected under qualified immunity for carrying out investigatory functions. Plaintiff responds that she is suing Clark and Marusak in their official capacities

6

only to the extent that they were not acting in a quasi-judicial capacity, a distinction Plaintiff asserts skirts the protections of Eleventh Amendment immunity.  Plaintiff concedes that various assertions in the second amended complaint are barred by prosecutorial immunity, but that the gravamen of her allegations are that Clark and Marusak stepped into the shoes of investigating police officers and thus acted outside their prosecutorial roles.

"'When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county'" and is therefore entitled to invoke Eleventh Amendment immunity.  Ying Jing Gan v. City of New York, 996 F.2d 522, 535-36 (2d Cir. 1993) (quoting Baez v. Hennessy, 853 F.2d 73, 77 (2d Cir. 1998), cert. denied, 488 U.S. 1014, 109 S. Ct. 805, 102 L. Ed. 2d 796 (1989)).  The Eleventh Amendment bars official capacity suits that center on the decision of whether or not, and on what charges, to prosecute.  Id. at 536.  Thus, to the extent Peters brings suit against Clark and Marusak on the basis of their decision to prosecute her, or in their capacities as state officials, Defendants are entitled to Eleventh Amendment immunity.  See id.  As discussed below, Peters asserts claims outside this conduct, and these claims are brought against Clark and Marusak not as state officials, but as officials of the municipality to which they are assigned.  See id.  ("With respect, however, to claims centering not on decisions whether or not . . . to prosecute but rather on the administration of the district attorney's office, the district attorney has been treated not as a state official but rather as an official of the municipality to which he is assigned."); Curto v. Bender, No. 04-CV-26S, 2005 WL 724156m at *8 (claims against assistant district attorney relating to personnel administration not barred by Eleventh Amendment).  Further, "a suit for damages against a municipal officer in his or her official capacity is the equivalent of a damage suit against

7

the municipality itself.  Russ v. Chavers, No. 10-CV-1370 (SLT)(JO), 2011 WL 7063376, at *3 (E.D.N.Y. Dec. 14, 2011) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)).  Peters' claim against Clark and Marusak in their official capacities as municipal employees is duplicative of their claim against the County, Nogue v. City of New York, 1999 WL 669231, at *7 n. 13 (E.D.N.Y. Aug. 27, 1999), and will therefore be considered in tandem with this Court's later discussion of the County's Motion to Dismiss.

But Peters second amended complaint also seeks to assert claims against Clark and Marusak in their individual capacities.  As to these claims, this Court must consider whether dismissal is warranted under the doctrines of absolute or qualified immunity.

### 1.    Absolute Immunity

"It is firmly established that prosecutors are entitled to absolute immunity from suits for damages arising from activities that are 'intimately associated with the judicial phase of the criminal process.'" Barbera v. Smith, 836 F.2d 96, 99 (2d Cir. 1987) (quoting Imbler v. Pachtman, 424 U.S. 409, 430-31, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976)).  This protection encompasses "all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation." Barrett v. United States, 798 F.2d 565, 571-72 (2d Cir. 1986).  Thus, prosecutors are "absolutely immune with respect to a decision whether or not to prosecute . . . and the conduct of a plea bargain."  Barbera, 836 F.2d at 99-100 (internal citations omitted).

Peters concedes that various allegations touching upon Defendants' conduct during trial were included in the complaint only to provide context for Defendants' other actions and are not, in themselves, actionable.  Therefore, this Court must only consider whether the remaining acts can be viewed as falling outside Clark and Marusak's prosecutorial

8

roles, and are more properly viewed as administrative or investigatory.

The ultimate question in whether prosecutors are entitled to absolute immunity is "whether the prosecutors have carried their burden of establishing that they were functioning as 'advocates' when they engaged in the challenged conduct." Warney v. Monroe County., 587. F.3d 113, 121 (2d Cir. 2009) (quoting Doe v. Phillips, 81 F.3d 1204, 1209 (2d Cir. 1996)). Administrative duties and investigatory functions unrelated to a prosecutor's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity. Id. (quoting Buckley v. Fitzsimmons, 509 U.S. 259, 273, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993)). Courts "draw a line between the investigative and administrative functions of prosecutuors, which are not protected by absolute immunity, and the advocacy functions of prosecutors, which are so protected." Parkinson v. Cozzolino, 238 F.3d 145, 150 (2d Cir. 2001).

In drawing that line "it is unhelpful to ascertain the prosecutors' functional role by isolating each specific act done or not done; rather, a prosecutor's function depends chiefly on whether there is pending or in preparation a court proceeding in which the prosecutor acts as an advocate." Warney, 587 F.3d at 123. So it is that "whether to test for potentially inculpatory (or exculpatory) information, how and when to disclose that information, and whether to seek to vacate [a defendant's] conviction [can all be] exercises of legal judgment made in the 'judicial phase' of proceedings integral to the criminal justice process" and protected by absolute immunity. Id. at 124. By contrast, orchestrating sting operations, authorizing or directing the use of wiretaps, or coercing confidential informant into consenting to a wire are acts that do not enjoy absolute immunity. Bethea v. Plusch, No. 1:11-cv-57-jgm, 2011 WL 5967180, at *4 (D. Vt. Nov. 29, 2011). Similarly, releasing

information to the media, assisting in the execution of a search or seizure, engaging in personal activities totally unrelated to assigned duties, or supervising and interacting with law enforcement agencies in acquiring evidence which could be used for prosecution are not protected by absolute immunity. Barbera, 836 F.3d at 100.  Further, "[a]ctions taken prior to the start of a formal legal proceeding are not entitled to absolute immunity because prior to the start of such a formal proceeding, the prosecutor has not stepped into his role as an advocate." Simon v. City of New York, – F. Supp. 2d –, 2011 WL 4940689, at *3 (E.D.N.Y. 2011) (citing Burns v. Reed, 500 U.S. 478, 493, 111 S. Ct. 1934, 1943, 114 L. Ed. 2d 547 (1991)).

Peters alleges the following acts, which all occurred prior to the filing of the indictment: controlling the conduct of criminal investigations (Comp. ¶ 39); ordering an incomplete screening polygraph (Comp. ¶ 45); directing law enforcement not to test DNA samples (Comp. ¶ 53); directing the taking of a statement from a non-credible witness (Comp. ¶¶ 67, 70); falsely informing a witness that certain evidence existed when in fact it did not (Comp. ¶ 80); making misleading public statements prior to trial (¶ 116); and permitting witnesses to access police files for purposes of influencing their testimony (Comp. ¶ 84).

Assuming these allegations as true, as this Court must, there is little doubt that at least some of these acts, taking place as they did prior to Peters' indictment, were outside the scope of Clark and Marusak's prosecutorial roles.  Although the decision to ultimately prosecute Peters is clearly entitled to absolute immunity, see Houston v. Nassau County, No. 08 Civ. 197(JFB), 2011 WL 477732, at *3 (E.D.N.Y. Feb. 2, 2011) (describing decision to initiate prosecution as quintessential prosecutorial function), the allegation here is that

Clark and Marusak actually dictated what evidence was collected.  This falls squarely into the realm of "supervision of and interaction with law enforcement agencies in *acquiring* evidence that might be used in a prosecution," which is not entitled to absolute protection. Barbera, 836 F.2d at 100 (emphasis in original).  To be sure, "[p]reparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence."  Imbler, 424 U.S. at 431 n. 33.  But the alleged acts do not relate to such preparations.

In particular, making misleading public statements concerning evidence in the case is not protected.  See Buckley, 509 U.S. at 277 (prosecutors' statements to media not entitled to absolute immunity because such comments have no functional tie to the judicial process).  Although their failure to investigate further based on the results of the polygraph test are not actionable, see Brodnicki v. City of Omaha, 75 F.3d 1261, 1267 (8th Cir. 1996) (prosecutor's review of polygraph results presented by defendant and decision to prosecute entitled to absolute immunity), directing the polygraph examiner to only take a partial examination to reach a preordained result is actionable, see Green v. County of Monroe, 423 Fed. Appx. 98, 99 (2d Cir. 2011) (vacating dismissal where plaintiff claimed prosecutors conducted own investigation and manipulated evidence) (summary order). Similarly, directing police not to test DNA samples is a decision not entitled to absolute immunity.  See Barbera, 836 F.2d at 100 (no absolute immunity when supervising law enforcement agencies in acquiring evidence).

The alleged conduct was not reviewing evidence in this case, but rather instructing police officers what and what not to collect.  See Hickey v. City of New York, No. 01-CV-6506, 2002 WL 1974058, at *2  (S.D.N.Y. Aug. 26, 2002) ("[W]hen prosecutors involve

themselves in functions that have typically been performed by police officers or investigative agents, they are as much (or as little) subject to suit as such officers."). This Court again notes that the conduct is alleged to have occurred before Peters' indictment and before the existence of probable cause for arrest. Hill, 45 F.3d at 662 (no absolute immunity prior to probable cause).

Even if this Court were to find that these acts fell within Defendants' prosecutorial duties, Peters has also alleged conduct post-conviction that may provide grounds on which to bring suit against Clark and Marusak in their individual capacities. In the post-conviction context, distinguishing between advocacy and investigative functions is particularly difficult. Warney, 587 F.3d at 121. For example, opposing civil habeas petitions, as well as other forms of collateral relief, amending restitution orders, pursuing parole violations, and resolving prisoner release date disputes, "may be somewhat administrative, and may not always relate to in-court advocacy, yet often they are integral to an ongoing 'judicial phase' of a prosecution." Id. Delaying the release of exonerating evidence while conducting further investigation is, for example, protected by absolute immunity. Id. at 123-25. As is defending a post-conviction collateral attack. Id. at 123.

Not among this list is impeding a cold case investigation. The second amended complaint alleges that Defendants compelled a witness to reaffirm his prior statement, threatened another witness, and threatened high ranking police officers to cease further investigation. Based on Plaintiff's allegations, Defendants were not defending a post-conviction challenge, but trying to avoid one even being mounted. As with the other conduct alleged, these acts are not protected by absolute immunity.

### 2.    Qualified Immunity

Having found that Clark and Marusak are not entitled to absolute immunity, dismissal may nevertheless be proper if their actions are entitled to qualified immunity. Where a prosecutor "performs the investigative functions normally performed by a detective or police officer," he will only be entitled to qualified immunity. Green v. County of Monroe, 423 Fed. Appx. 98, 99 (2d Cir. 2011) (quoting Buckley v. Fitzsimmons, 509 U.S. 259, 273, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993)) (summary order); Hill, 45 F.3d at 662 ("Before any formal legal proceeding has begun and before there is probable cause to arrest, it follows that a prosecutor receives only qualified immunity for his acts."). Officials are protected from § 1983 liability by qualified immunity if their actions (1) did not violate clearly established law or (2) were objectively reasonable. See Warren v. Keane, 196 F.3d 330, 332 (2d Cir. 1999).   In the context of a motion to dismiss, defendants raising a qualified immunity defense "face[] a formidable hurdle." McCray v. City of New York, Nos. 03-cv-9685, 03-cv-9974, 03-cv10080, 2007 WL 4352748, at *18 (S.D.N.Y. Dec. 11, 2007). "Because the evidence supporting a finding of qualified immunity is normally adduced during the discovery process and at trial, the defense of qualified immunity [usually] cannot support the grant of a Fed. R. Civ. P. 12(b)(6) motion . . . ." Id.

Clark and Marusak argue that whatever investigative functions they performed are shielded by qualified immunity.  This Court agrees that were it to find that Plaintiff's second amended complaint only alleged poorly directing the collection of evidence then qualified immunity might apply.  The mere fact that they considered the evidence against Donahue and ruled him out as a suspect is not enough in itself to make out a claim under § 1983. See Raghavendra v. N.L.R.B., No. 08 Civ. 8120(PAC)(HBP), 2009 WL 5908013, at *14

(S.D.N.Y. Aug. 27, 2009) ("To the extent that plaintiff is challenging [the prosecutor's] decision not to conduct an investigation or her failure to conduct a 'meaningful' investigation prior to dismissing his complaint, [the prosecutor] is also entitled to absolute immunity."); Trammell v. Coombe, 95 Civ. 1145 (LAP), 1996 WL 601704, at *3 (S.D.N.Y. Oct. 18, 1996) (decision not to investigate so closely intertwined with decision not to prosecute as to be entitled to prosecutorial immunity). However, assuming the facts stated in Peters' second amended complaint are true, this Court cannot find, as a matter of law, that Clark and Marusak's actions did not violate clearly established law. Furthermore, this Court cannot find as a matter of law that it was objectively reasonable for those Defendants to believe their conduct did not violate the law. Accordingly, neither is entitled to qualified immunity with respect to Peters' § 1983 claim at this time.

As already discussed, Plaintiff alleges not merely that Clark and Marusak should not have excluded Donahue on the basis of the polygraph test, but that Defendants ordered a partial test they knew would not reveal any involvement. Peters also alleges that Defendants worked together to manufacture false evidence, including securing the agreement of Defendant Detective Michael D. Lyons to provide false testimony. See Zahrey v. Coffey, 221 F.3d 342, 354 n. 11 (2d Cir. 2000) (prosecutor may be subject to suit for "fabricating evidence during the investigatory phase of a criminal case when the fabricated evidence results in the deprivation of the accused's liberty"); Anilao v. Spota, 774 F. Supp. 2d 457, 492 (E.D.N.Y. Mar. 31, 2011) (denying motion to dismiss where prosecutors allegedly fabricated evidence used as basis for indictment).

Finally,  there can be little doubt that Defendants must have known that the act of impeding a cold case investigation by coercive conduct was neither lawful nor objectively

14

reasonable.  Nothing indicates that either Marusak, who was at the time in private practice, or Clark were personally involved in the cold case investigation.  Although it was Clark who ultimately announced the independent medical examiners' results, based on the facts alleged it does not appear that Clark had any official involvement with contacting witnesses to verify their former testimony.  Rather, the pleadings allege that he and Marusak acted independently of other investigators to manipulate witnesses and pressure the Buffalo Police Department into ending its investigation.  Notably, there was no appeal or other legal proceeding pending on Plaintiff's behalf at the time of the cold case investigation. See Warney, 587 F.3d at 124 ("The proper and useful focus for ascertaining the function being served by a prosecutor's act is therefore on the pendency of court proceedings that engage the prosecutor as an advocate for the state.").

In opposing a motion to dismiss, a "plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense."  McKenna v. Wrights, 386 F.3d 432, 436 (2d Cir. 2004).  Viewing Plaintiff's allegations in this light, her claims that Clark and Marusak conspired to fabricate and manipulate evidence, as well as interfere with the cold case investigation survive dismissal.  Accordingly, Defendants Clark and Marusak are not entitled to qualified immunity and their Motion to Dismiss will be denied to the extent it seeks to hold them liable for acts outside their prosecutorial roles.

## C.    Defendant Erie County's Motion to Dismiss

The County argues that the claims against it should be dismissed because it cannot be held liable under a theory of *respondeat superior* and because Clark and Marusak do not represent the County's official policy.  Peters responds that she is not seeking to hold

15

the County liable on a theory of *respondeat superior.*  Rather, Peters asserts that it was the County's policy or custom of having district attorneys direct and control police homicide investigations and that Clark and Marusak acted pursuant to that policy in subverting the police investigation into Girard's death.  This, Plaintiff maintains, is sufficient to establish municipal liability.

A municipality cannot be held liable on the theory of *respondeat superior* or simply because it employs a tortfeasor.  Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  It may, however, be held liable for damages under § 1983 when execution of government policy or custom inflicts the injury in question.  Id.  The existence of such a municipal policy or custom may be demonstrated in a number of ways, including: (1) showing an officially promulgated and endorsed policy, Id. at 690; (2) showing that actions taken by officials with final policymaking authority caused a constitutional violation, Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986); (3) showing that municipal decision-making evidences "deliberate indifference" to the rights of those with whom municipal employees come in contact, including failure to remedy an otherwise constitutional policy so deficient that policymakers knew or should have known with a high degree of certainty that constitutional violations could result, City of Oklahoma City v. Tuttle, 471 U.S. 808, 819, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985), or failure to train employees when training is necessary to prevent the violation of federal rights, City of Canton v. Harris, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).

Plaintiff's second amended complaint asserts that:

> [T]here was a policy, practice and custom of the Defendant
> COUNTY OF ERIE and Erie County District Attorney's Office

> to take an active part in and exert inordinate control over the
> murder investigations of the Defendants CITY OF BUFFALO
> and BUFFALO POLICE DEPARTMENT and a corresponding
> policy, practice and custom of [those] Defendants . . . to permit
> the Erie County District Attorney's Office to direct and control
> their investigations, including, but not limited to, what evidence
> gets tested, what witness to question, and the role polygraph
> tests take in eliminating suspects.

(Comp. ¶ 39.) Plaintiff has sufficiently alleged the existence of a policy, practice or custom.
But Plaintiff must also show that this policy was the cause of her injury. "[C]ongress did
not intend to impose liability on a municipality unless *deliberate* action attributable to the
municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights."
Bd. of Cnty. Com'rs Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 117 S. Ct. 1382, 137 L. Ed.
2d 626 (1997) (emphasis in original). The necessary causal connection is always
established where the municipal policy is itself unconstitutional. Amnesty America v. Town
of West Hartford, 361 F.3d 113, 125 (2d Cir. 2004). By contrast:

> Where plaintiffs allege that their rights were deprived not as a
> result of the enforcement of an unconstitutional official policy
> or ordinance, but by the unconstitutional application of a valid
> policy, or by a city employee's single tortious decision or
> course of action, the inquiry focuses on whether the actions of
> the employee in question may be said to represent the
> conscious choices of the municipality itself.

Id. However, in such a circumstances "considerably more proof than the single
incident will be necessary in every case to establish both the requisite fault on the part of
the municipality, and the causal connection between the 'policy' and the constitutional
deprivation." Tuttle, 471 U.S. at 824.

Plaintiff has alleged numerous acts by Frank J. Clark, III and Assistant District
Attorney Marusak that this Court has found fall outside their prosecutorial roles. See Miller
v. County of Nassau, 467 F. Supp. 2d 308, 315 (E.D.N.Y. 2006) (citing Myers v. County

of Orange, 157 F.3d 66, 77 (2d Cir. 1998)) (noting Second Circuit's holding that "a county could be held liable for the management of the district attorney's office and a long history of negligent disciplinary practices regarding law enforcement personnel").  "[W]here a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a 'deliberate choice,' that acquiescence may 'be properly thought of as a city policy or custom that is actionable under § 1983." Amnesty America, 361 F.3d at 126 (quoting City of Canton, 489 U.S. at 387).  Plaintiff, having pled a series of acts in 1997 and 2007 undertaken by district attorneys Clark and Marusak, pursuant to the County's alleged custom or practice of having district attorneys control homicide investigations, has sufficiently shown that the County's policymakers may plausibly have known about, and permitted, the alleged conduct.  See Pearce v. Estate of Longo, 766 F. Supp. 2d 367, 377-78 (N.D.N.Y. 2011) (denying motion to dismiss where pattern of alleged misconduct established custom tacitly endorsed by defendant city).

Further, this Court has insufficient information to determine whether Clark and Marusak can be described as policymakers such that their acts could extend liability to the municipality.  "Municipal liability may attach under § 1983 when a [municipal] policymaker takes action that violates an individual's constitutional rights." Gronowski v. Spender, 424 F.3d 285, 296 (2d Cir. 2005).  "Where a district attorney acts as the manager of the district attorney's office, the district attorney acts a county policymaker." Walker v. City of New York, 974 F.2d 293, 301 (2d Cir. 1992).  Plaintiff alleges that Clark and Marusak controlled the police investigation.  Further, Clark was later elected Erie County District Attorney. (Comp. ¶ 120.)  These facts make dismissal at this stage unwarranted.  See Anilao, 774

F. Supp. 2d at 496 n. 27 (noting that municipal liability could be premised on district attorney's role as final policymaker where plaintiff alleged acts involving district attorney).

Accordingly, the County's Motion to Dismiss will be denied.


## IV. CONCLUSION

For the foregoing reasons, Clark and Marusak's Motion to Dismiss is denied.  The County's Motion to Dismiss is similarly denied.

## V.  ORDERS

IT HEREBY IS ORDERED, that Clark and Marusak's  Motion to Dismiss  (Docket No. 25) is DENIED.

FURTHER, that Plaintiff's Cross-Motion for Leave to File a Second Amended Complaint (Docket No. 38) is GRANTED.

FURTHER, that the County's Motion to Dismiss (Docket No. 5) is DENIED.

SO ORDERED.


Dated:        January 30, 2012
              Buffalo, New York


                                                    /s/William M. Skretny
                                                 WILLIAM M. SKRETNY
                                                       Chief Judge
                                                United States District Court